In the Matter of the ESTATE OF Christene J. GOODWIN, deceased.

Gene SEALE, Appellant,

v.

Frederick SEALE, Appellee.

No. 78462.

Court of Appeals of Oklahoma, Division No. 4.

May 4, 1993.

Monte W. Strout, Tahlequah, for appellant.

Doak Willis, Tahlequah, for appellee.

STUBBLEFIELD, Judge.

The issue herein is whether the restriction on the making of a will found in 84 O.S.1991 § 41(B), is applicable in situations where a guardian has been appointed under authority of the Protective Services for the Elderly and for Incapacitated Adults Act, 43A O.S.1991 §§ 10–101 through 10–110 (the Act).

On June 8, 1989, the Department of Human Services petitioned for an order for emergency protective services for 83–year-old Christene J. Goodwin. The petition stated that due to abuse, neglect and exploitation Goodwin was in need of assistance to protect herself and her estate. The district court issued an emergency order naming the DHS temporary guardian of Goodwin. On June 9, the district court, after a hearing on the matter, appointed a DHS Adult Protective Services officer, Linda Potts, as Goodwin's guardian and set the matter for review on September 8, 1989. On July 7, 1989, Goodwin executed a Last Will and Testament, appointing her son, Gene Seale, executor and making considerable changes in the bequests made in her previous will executed in 1987.

Goodwin died on March 18, 1991. Gene Seale submitted the 1989 will for probate. Grandson Frederick Seale, the person named as executor in the earlier will, filed an objection and then filed a motion for summary judgment on the basis that the 1989 will was not executed according to section 41(B). The district court sustained Frederick Seale's motion and Gene Seale appeals.

The proponent of the will alleges one critical error of the lower court. He asserts that section 41(B) does not apply because the provisions of the Act do not take any rights away from the assisted person other than those specifically set out in the order, and that an emergency order under the Act does not constitute a strict guardianship.

There is a growing awareness of the elderly and a concern for the welfare of this burgeoning segment of our population. By the year 2000, the elderly population of our nation is expected to reach thirty-five million.[1] Unfortunately, along with a growing elderly population has come an increase in elder abuse. Perhaps as many as five percent of our elderly are abused.[2]

In 1981, Congress addressed this problem in hearings by the United States House of Representatives Select Committee on Aging. The committee determined that elder abuse was indeed a serious problem and found that physical abuse was the

1. Christine A. Metcalf, Comment, *A Response to the Problem of Elder Abuse: Florida's Revised Adult Protective Services Act,* 14 Fla.St.U.L.Rev. 745, 746 (1986).

2. Audrey S. Garfield, Note, *Elder Abuse and the States' Adult Protective Services Response: Time for a Change in California,* 42 Hastings L.J. 859 (1991).

most common type of abuse, but that the elderly were also often subject to financial and psychological abuse, as well as abuse of Constitutional rights. The committee concluded with a recommendation to the states to enact laws to protect the elderly.[3] As a result of the committee's findings, many states, including Oklahoma, enacted legislation intended to protect the elderly. Oklahoma amended its laws in 1984 to include the Act in question herein.

Adult protective services are designed to provide the elderly with a system of protection and care according to their needs. A great concern in such legislation is the need to protect the elderly person's right to privacy, liberty and self-determination. In Oklahoma's Act, the stated legislative purpose is to "protect the individual from exploitation, abuse or neglect" yet to still guarantee the individual, "to the maximum degree of feasibility, ... the same rights as other citizens." 43A O.S.1991 § 10–102.

The question thus becomes whether it is feasible to omit the protective services ward from the provisions of 84 O.S.1991 § 41(B), which provides:

The appointment of a guardian or a conservator does not prohibit a person from disposing of his estate, real and personal, by will; provided, that when any person subject to a guardianship or conservatorship shall dispose of such estate by will, such will must be subscribed and acknowledged in the presence of a judge of the district court. Subscribing and acknowledging such will before a judge shall not render such will valid if it would otherwise be invalid.

Though a clear intent of the Act is to limit legal imposition upon the person in need of protective services, section 41(B) is not a part of the Act. We conclude that the restriction provided in section 41(B) *does* apply, because it does not deprive the elderly person or incapacitated adult of any right, but, indeed, offers the very type of protection from financial abuse clearly intended by the Act. We also conclude that

the legislature's use, in the Act, of the term "guardian" creates a guardianship as envisioned in section 41(B).

In the Oklahoma Guardianship and Conservatorship Act, 30 O.S.1991 §§ 1–101 through 5–101, the legislature defines "guardian of an incapacitated person" as "a person who has been appointed by a court ... to assure that the essential requirements for the health and safety of said person are met, to manage the estate or financial resources of said person, or both." 30 O.S.1991 § 1–111(5). It defines the general term "guardian" as "a person appointed by the court to take care of the person or property of another." 30 O.S. 1991 § 1–105.

The word "guardian" is also used in the Act, and although the Act does provide certain definitions, it does not redefine "guardian." Therefore, it must be assumed that the term has the same meaning as in the Oklahoma Guardianship and Conservatorship Act, when used in 43A O.S. 1991 §§ 10–101 through 10–110, and in 84 O.S.1991 § 41(B). We note that in section 41(B), the legislature did not refer only to general guardianships or provide that the section did not apply to limited or temporary guardianships. If the legislature had meant to exclude temporary guardianships, it could have done so explicitly.

Finally, application of the provisions of section 41(B) to the Act is logical, because it offers the type of financial protection envisioned by the Act. Because the legislature specifically included the lesser restrictive conservatorship in section 41(B), it seems certain that it intended application of section 41(B) to temporary guardianships. A conservatorship is created when a "person is, by reason of physical disability only, unable to manage his property." 30 O.S. 1991 § 3–211(2). It is a voluntary status, since a conservator may be appointed only with the consent of the person for whom the conservatorship is sought. 30 O.S.1991 § 3–212.

Because the legal impediment of section 41(B) applies to conservatorships, which

**3.** Metcalf, *supra* note 1 at 745.

are voluntary and involve lesser impairment of the "ward," it would make little sense for the law not to apply to guardianships created by the Act:

> [The "ward"] means an individual who, because of physical or mental disability, incapacity or other disability, is substantially impaired in his ability to provide adequately for his own care or custody, or is unable to manage his property and affairs effectively, or to carry out the activities of daily living, or to protect himself from abuse, neglect, or exploitation without assistance from others.

43A O.S.1991 § 10–103(6). Such a person is clearly more in need of the protection afforded by section 41(B) than is the person subject to conservatorship.

■ Here, the circumstances of Goodwin clearly evinced a considerable need for protection from abuse and exploitation—both of these facts were propounded as bases for the protective services. Where a district court has reviewed the allegations and has appointed a guardian, a legitimate state purpose is advanced by the law requiring a subsequent will to be signed and acknowledged before a judge of the district court. Such a law bears a rational relationship to the purpose of protecting an infirm ward and is constitutional. *In re Estate of Lahr*, 744 P.2d 1267 (Okla.1987).

We find that the will executed during the period when Goodwin was under legal guardianship pursuant to the Act fails as a matter of law when not subscribed and acknowledged according to 84 O.S.1991 § 41(B).

AFFIRMED.

BOUDREAU, P.J., and TAYLOR, J., concur.